UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RYAN CHARLES DIEMOND,

        Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.

_____/

Case No. 1:17-cv-928

Honorable Robert J. Jonker

## OPINION

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131 et seq., Section 504 of the Rehabilitation Act (RA), 29 U.S.C. § 794, and state law.  Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).   The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants for misjoinder and failure to state a claim.

## Discussion

### I.      Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at Oaks Correctional Facility (ECF) in Manistee, Michigan.  The events about which he complains occurred while he was incarcerated at ECF and six other MDOC facilities.  Plaintiff sues over 100 defendants, including the Governor of the State of Michigan, the MDOC Director, and numerous prison officials from each of the prisons where he was incarcerated.

Plaintiff's allegations concern a number of incidents occurring over a five-year period, from 2013 to 2018.  The circumstances and conduct about which he complains can be grouped into the following general categories:  (1) conduct by mental health officials at Charles Egeler Reception & Guidance Center (RGC) in connection with his intake and admission to the MDOC in 2013; (2) claims related to an alleged mental impairment (ADD/ADHD), including denial of a reasonable accommodation for that impairment (i.e., access to the prison legal writer program), when he was incarcerated at the G. Robert Cotton Correctional Facility (JCF) from 2013 to 2017; (3) claims related to a physical condition (an injured tendon in his right hand) that developed in 2014, including lack of adequate treatment and denial of access to a reasonable accommodation (i.e., access to the prison legal writer program) for that condition at JCF from 2014 to 2017; (4) lack of adequate assistance with his legal claims from the prison legal writer programs at two different prisons, JCF and Kinross Correctional Facility (KCF), in 2017; (5) retaliation and mistreatment by prison officials at KCF in 2017; and (6) mistreatment by prison officials at ECF in 2017 and 2018, including denial of access to the prison legal writer program.

## II.  Misjoinder

Plaintiff has sued a very large number of defendants hailing from different locations for separate incidents occurring over a long span of time.  Thus, the Court will consider whether Plaintiff's claims and defendants have been properly joined in this action.

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims.  Rule 20(a)(2) governs when multiple defendants may be joined in one action:  "[p]ersons . . . may be joined in one action as defendants if:  (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Rule 18(a) states:  "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action.  It is not concerned with joinder of claims, which is governed by Rule 18.  Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil § 1655 (3d ed. 2001), quoted in *Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also*

*Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Michigan Dep't of Corrs.*, 2007 WL 4465247, *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

In other words, a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> [M]ultiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .

> A buckshot complaint that would be rejected if filed by a free person -- say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions -- should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would defeat the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998); *Shephard v. Edwards*, 2001 WL 1681145, *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"). To allow Plaintiff to proceed with improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims turn out to be frivolous.

The Court will look at the first claims and defendants named in the complaint to determine whether they are properly joined to the remaining claims and defendants. The first seven defendants listed in the complaint (apart from the MDOC, which is identified in the headnote of the complaint) are officials at RGC. (*See* Am. Compl., ECF No. 13, PageID.310-312.) And

the first allegations in the body of the complaint concern his treatment by these officials in 2013. (*See id.*, PageID.327-329.)

As to these seven defendants, Plaintiff alleges that he has been diagnosed with attention-deficit disorder ("ADD") and attention-deficit hyperactivity disorder ("ADHD"), which impair his ability to concentrate, interact with others, think, learn, organize, remember, and verbally communicate his thoughts in an "effective manner." (*Id.*, PageID.328.) He contends that the mental health professionals at RGC did not adequately investigate, document, or diagnose his condition when he was admitted to the MDOC in 2013. He contends that they did not seek out or review any of his community mental health records documenting his condition, and met with him for only a few minutes when assessing his mental health status. He contends that they "purposefully misdiagnosed" him and denied him the benefit of the MDOC's "Out-Patient Mental Health Program," by "excluding him from participation in the services necessary for continuity of treatment for his ADD/ADHD." (*Id.*, PageID.329.) He also contends that they were acting with a "common purpose" to obstruct justice and interfere with his rights under the ADA. (*Id.*)

Plaintiff's claims against the defendants at RGC are not transactionally related to his claims against the other defendants. All of the other incidents alleged in the complaint occurred at different prison facilities, at a different time, and involved different defendants acting under different supervisors. Thus, the claims against the remaining defendants are not properly joined to the claims against the seven defendants at RGC.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See DirecTV, Inc. v. Leto*, 467 F.3d 842,

845 (3d Cir. 2006); *Carney v. Treadeau*, No. 07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("Parties may be dropped . . . by order of the court . . . of its own initiative at any stage of the action and on such terms as are just."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm may exist if the party loses the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Bldg. Co.*, 848 F.2d at 682.

As far as the statute of limitations is concerned, the statutes of limitations for claims under § 1983, Title II of the ADA, and the RA are derived from state law. *See Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) ("[T]he applicable state statute of limitations which applied generally to personal injury actions was the proper one to be applied in [a] section 1983 case."); *Lewis v. Fayette Cty. Detention Ctr.*, No. 99-5538, 2000 WL 556132, at *2 (6th Cir. Apr. 28, 2000) ("[C]ourts faced with ADA or Rehabilitation Act claims have also looked to the state's statute of limitations for personal injury actions."). "State law tolling principles also apply to determine the

timeliness of civil rights claims." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003). "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Id.* Thus, dismissal of the misjoined claims and defendants in this action without prejudice will not cause gratuitous harm to Plaintiff's federal claims. He can raise them in a separate action, and the time period during which this action has been pending will not impact his ability to bring those claims. Accordingly, the Court will dismiss all claims other than those against the defendants at RGC with prejudice, because Plaintiff improperly joined those other claims and defendants in this action.

### III. Failure to state a claim

Next, the Court will assess whether Plaintiff's allegations against the defendants at RGC state a claim. A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

The Court notes at the outset that Plaintiff does not allege conduct by a particular RGC defendant in the body of the complaint. Indeed, four of the seven RGC defendants listed in the complaint are identified only as "John Doe"; Plaintiff provides no other information about them other than the fact that they are employed at RGC. (Am. Compl., PageID.311-312.) There are three RGC officials identified by name in the list of defendants: Nurse Heidi Valley, LMSW Sandra Corbin, and Dr. John D. Gherman. None of these individuals are mentioned in the body of the complaint itself. Instead, Plaintiff's allegations lump all of the "authorities and officials of the M.D.O.C., Bureau of Healthcare Services (B.H.C.S.), and its Qualified Mental Health Professionals (Q.M.H.P.)" together. (Am. Compl., PageID.328.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally

involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").

Although the names of Defendants Valley, Corbin, and Gherman appear in some of the health records attached to the complaint, Plaintiff does not attribute specific conduct to any of them. Moreover, it is not at all clear who the "John Doe" defendants are or why they are named as separate defendants. Thus, Plaintiff's allegations are not sufficient to provide fair notice of the claims against the RGC defendants, and are subject to dismissal for that reason alone.

Even if the Court were to disregard the foregoing defects in Plaintiff's allegations, his claims against the RGC defendants would be dismissed because his allegations fail to state a viable federal claim, and the Court declines to exercise supplemental jurisdiction over any claims under state law.

## A. 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff does not have an independent constitutional right to have his mental health conditions adequately documented in his prison medical records, or to obtain access to outpatient mental health treatment.

He has a constitutional right to mental health treatment in some circumstances, but he does not expressly allege that Defendants deprived him of adequate treatment for his ADD/ADHD. Nor does he allege facts that would give rise to a constitutional claim. The Eighth Amendment obligates prison authorities to provide some medical care to incarcerated individuals, *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976), but the Eighth Amendment is violated only when a prison official is deliberately indifferent to a prisoner's serious medical needs. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). In other words, Plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Plaintiff does not allege that he is at risk of serious harm without treatment for his ADD/ADHD.

Thus, Plaintiff does not state a § 1983 claim against the officials at RGC.

### B. ADA/RA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under the ADA, Plaintiff must allege that he is a "qualified person," that he has a "disability," and that he was denied a "service, program, or activity" of the state on account of his disability. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an

impairment." 42 U.S.C. § 12102(2). Similarly, Section 504 of the Rehabilitation Act protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

Plaintiff does not plausibly allege that any of the RGC defendants discriminated against him, or denied him benefits or access to a "service, program, or activity" of the state, because of his ADD/ADHD. He indicates that Defendants misdiagnosed him and prevented him from obtaining out-patient treatment, but he alleges no facts indicating that they did so because he has ADD/ADHD.

Furthermore, with regard to his ADA and RA claims elsewhere in the complaint, most of them focus on his inability to obtain access to the prison legal writer program. After he transferred out of RGC to other facilities, Plaintiff repeatedly requested access to this program because he allegedly has trouble concentrating and writing legal documents due to his ADD/ADHD. Plaintiff apparently contends that he needed access to this program as an accommodation for his ADD/ADHD, and that without assistance, he cannot adequately access the courts.

The record before the Court, however, strongly suggests that Plaintiff's condition has no meaningful impact on his ability to access the courts, and that Plaintiff is perfectly capable of filing and pursuing claims in court without assistance from a legal writer. After Plaintiff filed this action in October 2017, the Court directed him to file an amended complaint on the form complaint used by prisoners pursuing civil rights actions. (*See* Order, ECF No. 7.) Less than a month later, Plaintiff filed a 39-page handwritten complaint with more than 200 pages of exhibits. (ECF No. 13.) He also filed an objection to the Court's decision to deny him appointment of

counsel (ECF No. 9), a motion for an extension of time to file his amended complaint (ECF No. 10), and a supplement to the motion for extension of time (ECF No. 11). All of these pleadings and motions are signed by Plaintiff, and were apparently written in his own hand. There is no indication that he received assistance from a prison legal writer when preparing them.

Moreover, the exhibits to his amended complaint indicate that he prepared several different versions of typed and handwritten "notices" of the ADA violations alleged in his complaint, which he sent various state officials throughout the State of Michigan in 2017. (*See* ECF No. 13-3, PageID.441-459; ECF No.13-6, PageID.523-530; ECF No. 13-7, PageID.538-544.) Thus, the notion that his ADD/ADHD impairs his ability to prepare documents for filing with the court is undermined by the record, and any ADA/RA claim premised on the need for access to the prison legal writer program as an accommodation for his ADD/ADHD rests on a very weak foundation.

In any event, for the reasons already stated, Plaintiff fails to state an ADA/RA claim against the RGC defendants.

### C.  42 U.S.C. § 1985(3)

Plaintiff alleges that the defendants at RGC acted with an "unlawful common purpose" to deprive him of his rights under the ADA. (Am. Compl., PageID.329.) Construing his complaint generously, Plaintiff arguably asserts a conspiracy claim under 42 U.S.C. § 1985(3), which permits a claim against those who conspire to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws[.]" 42 U.S.C. § 1985(3). Plaintiff has no actionable conspiracy claim under § 1985(3), however, because that statute "does not cover claims based on disability-based discrimination or animus." *Bartell v. Lohiser*, 215 F.3d 550, 559 (6th Cir. 2000). Moreover, Plaintiff's allegations about a conspiracy

are wholly conclusory.  *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987) ("It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.").

### IV.  <u>Statute of Limitations</u>

Finally, even if Plaintiff had adequately alleged a viable federal claim against the RGC defendants, it would be barred by the statute of limitations.  As indicated in Section III, *supra*, the statutes of limitations for § 1983 and ADA/RA claims are borrowed from state law.  The same principle applies to the statute of limitations for § 1985 claims.  *Bowden v. City of Franklin*, 13 F. App'x 266, 272 (6th Cir. 2001).  Courts use the Michigan statute of limitations for personal-injury claims in Mich. Comp. Laws § 600.5805(10), which is three years.  *See Carroll*, 782 F.2d at 44; *Syzak v. Dammon*, No. 15-2468, 2017 WL 5712670 (6th Cir. Feb. 17, 2017).  Defendants' actions occurred in 2013, while Plaintiff was incarcerated at RGC, more than three years before he filed this action.

### V.  <u>Supplemental Jurisdiction</u>

Plaintiff invokes the Michigan constitution as a basis for his claims.  To the extent that Plaintiff states any claims against the RGC defendants that arise under state law, the Court declines to exercise jurisdiction over them. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims.  *Id.* Dismissal, however, remains "purely discretionary."  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).  Here, the balance of the relevant considerations weighs against the

continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims against the RGC defendants, if any, will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants identified as employees of RGC will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), and because the Court declines to exercise jurisdiction over any state-law claims against them. The other defendants will be dismissed due to misjoinder.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).[1]

The Court will enter a Judgment consistent with this Opinion.


Dated:    March 5, 2018          /s/ Robert J. Jonker
                                 ROBERT J. JONKER
                                 CHIEF UNITED STATES DISTRICT JUDGE

---

[1] A dismissal for failure to state a claim counts as a strike. Dismissal of the complaint, in part, for misjoinder should be treated the same way. A dismissal in part with prejudice and in part without prejudice can count as a strike. *See Pointer v. Wilkinson*, 502 F.3d 369, 377 (6th Cir. 2007). And preventing prisoners from avoiding the three-strikes rule is of particular concern following adoption of the PLRA. *See George*, 507 F.3d at 607; *Brown*, 185 F. App'x at 168-69; *Patton*, 136 F.3d at 464; *Shephard*, 2001 WL 1681145, *1. Where, as here, a set of claims and Defendants have been improperly joined to meritless claims, arguably in an attempt to avoid the action being counted as a strike, the dismissal should be counted as a strike under § 1915(g).